IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHEL BARNES,

               Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

              Defendant.

No. 6:14-cv-01906-HZ

OPINION & ORDER

Bruce W. Brewer
Law Offices of Bruce W. Brewer, PC
PO Box 421
West Linn, OR 97068

      Attorney for Plaintiff

Janice E. Hebert
U.S. Attorney's Office
1000 SW Third Avenue
Suite 600
Portland, OR 97204

Thomas M. Elsberry
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Rachel Barnes brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on August 17, 2010, alleging an onset date of March 15, 2010. Tr. 9, 175. Her application was denied initially and on reconsideration. Tr. 9, 91, 96.

      On January 31, 2013, Plaintiff appeared, with a non-attorney representative, for a hearing before an Administrative Law Judge ("ALJ"). Tr. 26. On May 29, 2013, the ALJ found Plaintiff not disabled. Tr. 6. The Appeals Council denied review. Tr. 1, 5.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on severe depression, anxiety, obsessive compulsive disorder, borderline personality disorder, heroin addiction in remission, history of self harm, and suicidal ideation. Tr. 246. At the time of the hearing, she was twenty-six years old. Tr. 32. She

was a high school graduate and was attending college. Tr. 32–33. Her past work experience included work as a custodian, sales attendant, animal caretaker, theater attendant, English teacher in a foreign county, and cashier. Tr. 56–57.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, the agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through her date of last insured. Tr. 1. Next, at steps two and three, the ALJ determined that Plaintiff had severe impairments of major depressive disorder, posttraumatic stress disorder, generalized anxiety disorder, mixed personality disorder not otherwise specified (with borderline, OCD, and avoidant features, and schizotypal traits), but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 11–13.

At step four, the ALJ's decision explained that Plaintiff has the following RFC:

[Plaintiff can] perform a full range of work at all exertional levels but with the following nonexterional limitations: [Plaintiff] can perform simple, routine tasks and follow short, simple instructions. She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. [Plaintiff] has average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing bases (i.e. eight hours a day, for five days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. [Plaintiff] will do best in a work environment with minimal supervisor contact. Minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not include simple and superficial exchanges and it does not include being in

proximity to the supervisor. She can work in proximity to co-workers but not in a cooperative or team effort, and will work best in a work environment that requires minimal interactions with co-workers. [Plaintiff] will work best in a work environment that is predictable with few work setting changes. [Plaintiff] would not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. She would work best in a work environment with minimal public contact.

Tr. 14–15. The ALJ determined that Plaintiff did not have any past relevant work. Tr. 20.

At step five, the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the economy such as motel cleaner, mail sorter, and custodian. Tr. 21. Thus, the ALJ determined that Plaintiff was not disabled. Id.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to reconcile apparent conflicts between the RFC and the vocational expert's testimony regarding jobs found in the  Dictionary

5 - OPINION & ORDER

of Occupational Titles ("DOT"), (2) failing to credit the opinion of examining psychologist Dr.

Lange, and (3) failing to give clear and convincing reasons for rejecting Plaintiff's testimony.

Because the ALJ found Dr. Lange relied on Plaintiff's subjective reporting, the Court analyzes

the credibility of Plaintiff's testimony before examining the ALJ's weighing of Dr. Lange's

opinion.

I.    Apparent Conflict between the RFC and DOT

Plaintiff argues that, at Step Five, the ALJ failed to reconcile two apparent conflicts

between the RFC and the DOT as required by law. According to Plaintiff, the RFC limits her to

jobs with reasoning Level 1. Therefore, Plaintiff argues that there is an apparent conflict between

the reasoning limitations in the RFC and the vocational expert's testimony that Plaintiff can

perform the mail sorter and custodian jobs that require reasoning Levels 3 and 2, respectively.

Second, Plaintiff argues that there is an apparent conflict between the RFC's limitations

regarding Plaintiff's interactions with other people and the vocational expert's testimony that

Plaintiff can perform the jobs of custodian and motel cleaner.

The Court finds that the RFC limits Plaintiff to Level 2 reasoning. Therefore, while the

Court agrees that the ALJ failed to reconcile the apparent conflict between the RFC and the

reasoning requirement of Level 3 for mail sorter, this was harmless error. Because even without

the mail sorter job, the ALJ relied on substantial evidence to find significant numbers of jobs

Plaintiff can perform in the national and regional economy. The Court finds no conflict between

the RFC's limitations regarding Plaintiff's interactions with other people and the jobs identified

by the vocational expert.

At Step Five, the Commissioner has the burden "to identify specific jobs existing in

substantial numbers in the national economy that [a plaintiff] can perform despite [her] identified

limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995); see also 20 C.F.R. §

416.920(g). In making this determination, the ALJ relies on the DOT, which is the Social Security Administration's "primary source of reliable job information" regarding jobs that exist in the national economy. Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990); see also 20 C.F.R. §§ 416.969, 416.966(d)(1). The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") levels; that is, "aspects of education (formal and informal) ... required of the worker for satisfactory job performance." DOT, App. C, 1991 WL 688702 (4th ed. 1991). The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most). See id. The ALJ relies on the testimony of a vocational expert to identify specific occupations that a plaintiff can perform in light of her RFC. 20 C.F.R. § 416.966(e); Valentine, 574 F.3d at 689.

When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a plaintiff can perform an occupation involving DOT requirements that appear more than the plaintiff can handle—the ALJ is required to reconcile the inconsistency. Massachi, 486 F.3d at 1153–54. The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. Id.; see also Social Security Ruling 00–4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). If the ALJ fails to ask the vocational expert about potential conflicts, this sort of "procedural error" may be "harmless" if there is no conflict between the vocational expert's testimony and the DOT, or if the vocational expert provides sufficient support for her conclusions "to justify any potential conflicts...." Massachi, 486 F.3d at 1154 n.19.

A.  RFC Reasoning Level and the DOT

First, the Court must determine whether the RFC limits Plaintiff to jobs requiring

reasoning Level 1 or whether the ALJ determined that Plaintiff was able to perform jobs

requiring reasoning Level 2 as well.[1] Plaintiff's RFC limited her to "perform simple, routine

tasks and follow simple, short instructions." Tr. 14. Reasoning Levels 1 and 2 are defined by the

DOT as follows:

> LEVEL 1
> Apply commonsense understanding to carry out simple one- or two-
> step instructions. Deal with standardized situations with occasional or no
> variables in or from these situations encountered on the job.
>
> LEVEL 2
> Apply commonsense understanding to carry out detailed but uninvolved written
> or oral instructions. Deal with problems involving a few concrete variables in or
> from standardized situations.

DOT, Appendix C, 1991 WL 688702 (4th ed.1991).

In an unpublished decision, the Ninth Circuit indicated that a restriction to performing

simple and routine tasks is not inconsistent with a job requiring reasoning Level 2. Lara v.

Astrue, 305 F. Appx. 324, 326 (9th Cir. Nov. 19, 2008) (finding that "someone able to perform

simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in

other words, Reasoning Level 2 jobs"). However, adding the modifier "one- or two-step

instructions" to performing "simple, routine, tasks," indicates a limitation of the RFC to Level 1.

See Trujillo v. Colvin, No. 3:13-CV-0620-SI, 2014 WL 2213218, at *5 (D. Or. May 27, 2014)

("the addition of the specific wording relating to 'one- or two-step instructions' is more

restrictive and correlates precisely with the phrasing used in the DOT's definition of Reasoning

---

[1] The Commissioner concedes that mail room sorter, which requires Reasoning Level 3, is
inconsistent with the RFC. Def. Brief at 4.

8 - OPINION & ORDER

Level 1, thereby rendering an RFC using this specific language compatible only with Reasoning Level 1 jobs").

Thus, this Court must decide whether adding "simple, short instructions" to performing "simple, routine, tasks" similarly restricts a RFC to Level 1. The Court finds that it does not. This Court has already determined that "simple, routine instructions" are not inconsistent with Level 2 reasoning, which requires "detailed but involved instructions." Patton v. Astrue, 2013 WL 705909, at *1 (D. Or. Feb. 25, 2013); see also Bobbitt v. Colvin, No. 03:13-CV-01320-HZ, 2014 WL 2993738, at *9 (D. Or. July 1, 2014). As this Court has explained:

> In the definition, the word "detailed" is modified with the words "but uninvolved". The dictionary meaning of "involved" is "complicated[.]" Webster's New Int'l Dictionary 1191 (3d ed. 2002). Furthermore, the definition of "complicated" is "not simple[.]" Id. at 465. Thus, "uninvolved" means "simple[.]" The modifier "but uninvolved" must be considered when interpreting the definition of Level [2] reasoning. See e.g., Abrew v. Astrue, 303 Fed. Appx. 567, 569–70 (9th Cir. 2008) (emphasized the phrase "but uninvolved" to affirm the ALJ's finding that the plaintiff could perform jobs with Level 2 reasoning, despite a limitation to simple tasks). Considering the entire phrase, "detailed but uninvolved," [this Court] find[s] that while the instructions may be detailed, they may also be simple. A task that includes "detailed, but uninvolved" instructions may consist of a number of steps, none of which are complex. [Without the express limitation to "one or two" steps or instructions, there is no limitation to Level 1.] Therefore, a [plaintiff] who is limited to "short, simple instructions" is capable of performing a job requiring Level [2] reasoning.

The Court similarly finds no inconsistency between "simple, short instructions" and Level 2 reasoning. See also Maxwell v. Comm'r Soc. Sec. Admin., 2013 WL 4087558, at *19 (D. Or. Aug. 12, 2013) (finding limitations to "simple, routine instructions and procedures," and "simple, routine tasks" not inconsistent with Level 2); Soto–Rojas v. Comm'r of Soc. Sec. Admin., Civil No. 09–6218–KI, 2011 WL 39141, at *7–8 (D. Or. Jan. 6, 2011) (finding the ALJ's RFC limitation of "blunt, easy steps" falls within reasoning Levels 1 and 2).

Plaintiff relies heavily on Rounds for her position that the ALJ's error in failing to ask the vocational expert to reconcile her testimony with the DOT was not harmless. In Rounds, the

court found that because the RFC limited the plaintiff to performing one- and two-step tasks, she was limited to Reasoning Level 1. <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 795 F.3d 1177 (9th Cir. 2015). All of the jobs the vocational expert recommended to the ALJ required Level 2 reasoning. <u>Id.</u> at 1182. Because the ALJ did not ask the vocational expert to address the conflict between the "one- and two-step task" limitation and occupations requiring Level 2 reasoning, the ALJ's error was not harmless. <u>Id.</u> at 1183–84. This was because there was no explanation on the record why the vocational expert or ALJ "may have believed that [the plaintiff's] specific limitation to 'one to two step tasks' should not be taken at face value. As such, the record did not support a conclusion that the ALJ's failure to resolve this apparent conflict was harmless error." <u>Id.</u> at 1184.

The case before this Court significantly differs from <u>Rounds</u>. First, there is a difference between the limitations in the RFC. In <u>Rounds</u>, "the ALJ did not merely restrict [the plaintiff] to 'simple' or 'repetitive' tasks. Instead he expressly limited her to 'one or two step tasks.'" <u>Id.</u> The ALJ in this case made no such specific limitation; he only limited Plaintiff to "simple, routine tasks" with "simple, short instructions," not one- or two-step instructions. As discussed above, a limitation to "simple, short instructions" is consistent with Level 2 reasoning. Second, in <u>Rounds</u>, the vocational expert only recommended jobs with Reasoning Level 2, a level inconsistent with the plaintiff's RFC. <u>See id.</u> at 1182. In contrast, in this case, the vocational expert recommended jobs with reasoning Levels 1, 2, and 3. Because Plaintiff's RFC allows for occupations at Levels 1 and 2, only one out of the three jobs recommended by the vocational expert conflicts with Plaintiff's RFC.

For the Commissioner to meet his burden at Step 5, he must show that work exists in "significant numbers" in the region where the plaintiff lives or in the nation. <u>See</u> 42 U.S.C. §

423(d). The ALJ's error in failing to reconcile the conflict between the RFC and mail sorter

position is harmless because the vocational expert nevertheless identified two jobs, motel cleaner

and custodian, that exist in significant numbers that Plaintiff can perform. Motel cleaner has

223,165 jobs in the national economy and 2,826 jobs in Oregon, and custodian has 1,043,914

jobs in the national economy and 12,235 jobs in Oregon. These numbers are significant. See

Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in the county and 64,000 jobs

nationwide was significant).

Further, even if Plaintiff's RFC were limited to Level 1, the ALJ relied on the vocational

expert's recommendation of motel cleaner (Level 1) as part of his finding that Plaintiff was not

disabled. Thus, there was at least one position that was not in conflict with Level 1. Evaluating

only the number of jobs for motel cleaner, it is still significant.

B.  RFC Additional Limitations and the DOT

Next, Plaintiff contends that the ALJ was required to ask the vocational expert about

apparent conflicts between the RFC's limitations regarding Plaintiff's interactions with others

and the DOT descriptions of motel cleaner and custodian. [2] Plaintiff argues there is an apparent

conflict between the RFC and the DOT because the DOT describes motel cleaner as requiring

"rendering personal assistance to patrons" and none of the positions recommended by the

vocational expert contain references to the level of cooperation with co-workers, level of

supervisor contact, predictability of the work environment, or amount of public contact. Pl.

Opening Brief at 10.

This Court finds that there is no apparent conflict between the RFC and the DOT

description of motel cleaner and custodian. The RFC stated that "[Plaintiff] will do best in a

_____

[2] The Court does not address the mail sorter position because the Commissioner concedes the
ALJ's identification of this job is not supported by substantial evidence.

work environment with minimal supervisor contact." Tr. 15. The ALJ then clarified what he

meant by minimal contact: it "does not preclude all contact, rather it means contact does not

occur regularly[,]"  "does not include simple and superficial exchanges and it does not include

being in proximity to the supervisor." Id. Additionally, the RFC stated that Plaintiff "would not

deal with the general public as in a sales position or where the general public is frequently

encountered as an essential element of the work process. She would work best in a work

environment with minimal public contact." Id. Each occupation the vocational expert provided to

the ALJ was not in apparent conflict with these limitations.

The jobs identified by the vocational expert have a Worker Function code of 8 in regard

to the jobs' relationship to working with people. Level 8 is the lowest level of interaction with

people for jobs listed in the DOT. See DOT, Parts of the Occupational Definition, 1991 WL

645965 (explaining that middle three digits in a DOT occupational code constitute the Workers

Functions code and the second of these digits relates to interaction with people on a scale of 1–8,

and "functions which are less complicated have higher numbers."). Level 8, "Taking

Instructions–Helping," entails "[a]ttending to the work assignment instructions or orders of

supervisor" and "[n]o immediate response required unless clarification of instructions or orders

is needed." DOT, Appendix B, Explanation of Data, People, Things, 1991 WL 688701. The next

level up, "Serving," indicated by a digit 7, requires the more advanced social skills of

"[a]ttending to the needs or requests of people or animals or the expressed or implicit wishes of

people" and "[i]mmediate response is involved." Id.

There is no apparent conflict between the RFC and the DOT for the occupations the

vocational expert provided to the ALJ. The ALJ limited Plaintiff to minimal contact with the

public and all of the jobs the vocational expert recommended were level 8 for interactions with

people—the lowest possible level. See Ackley v. Astrue, No. CV 10–185–SI, 2011 WL 4369119, at *8 (D. Or. September 19, 2011) (finding an ALJ's limitation to "[m]inimal interaction is not the same as no interaction" with the public).

Additionally, the record shows that the ALJ provided the vocational expert with a hypothetical incorporating all of Plaintiff's limitations so the vocational expert was aware of those limitations. At the January 31, 2013, hearing, the ALJ presented the vocational expert with a hypothetical individual incorporating Plaintiff's "age, education, and work experience[.]" Tr. 57. The ALJ also included all of Plaintiff's non-exertional limitations: that Plaintiff would best "work in an environment with minimal supervisor contact[,]" "in a work environment that requires minimal interactions with coworkers[,]" and "in a work environment with minimal public contact." Tr. 58–59. Because the evidence establishes that the ALJ incorporated all of Plaintiff's limitations in his hypothetical to the vocational expert and there is no apparent conflict between the jobs the vocational expert recommended and the DOT, the ALJ's reliance on the vocational expert's testimony was proper and supported by substantial evidence.

The only error made by the ALJ was in failing to question the vocational expert about the apparent conflict between mail sorter (reasoning Level 3) and the RFC. However, because the vocational expert identified two other jobs that Plaintiff could perform, this failure was harmless error.

II. Credibility of Plaintiff's Subjective Testimony

Plaintiff contends that the ALJ failed to give clear and convincing reasons for finding her subjective testimony not credible. The ALJ found Plaintiff not credible because of her lack of treatment, her failure to follow through with treatment and prescribed medication, and because her activities of daily living were inconsistent with her alleged limitations. The ALJ provided clear and convincing reasons for discounting Plaintiff's credibility.

In assessing the credibility of a plaintiff's testimony regarding the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting a plaintiff's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036.

The ALJ may consider many factors in weighing a plaintiff's credibility, including: (1) ordinary techniques of credibility evaluation, such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

A.  Treatment History and Failure to Follow Through with Treatment

The ALJ found that Plaintiff's lack of significant mental health treatment and failure to follow through with treatment recommendations throughout the relevant period undermined her assertion of severely limiting mental health symptoms. Tr. 15–16.

According to agency rules, a plaintiff's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p.[3] Moreover, a plaintiff's "failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the [plaintiff's] pain testimony.'" Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (while Fair regarded a plaintiff's claims due to physical pain, in Molina, the Ninth Circuit applied the rule to a plaintiff with mental health claims).

However, the Ninth Circuit has cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation…. In other words, we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of [the plaintiff's] underlying mental afflictions." Garrison v. Colvin, 759 F.3d 995, 1018 n.24 (9th Cir. 2014). Nonetheless, where there is no "medical evidence that [the plaintiff's] resistance [to treatment] was attributable to her mental impairment rather than her own personal preference," it is reasonable for an ALJ to conclude that the "level or frequency of treatment [is] inconsistent with the level of complaints." Molina, 674 F.3d at 1114.

Plaintiff asserts that she sought mental health treatment. Plaintiff points to counseling with Mary Horton, R.N., as well as her appointments with Ellen Margolis, LCSW, between March 2010 and December 2010. Tr. 309–17, 326–82. However, the counseling with Mary

---

[3] "Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009). They "'reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" Id. (alteration in original) (quoting Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006)).

Horton was from 2002–2005, prior to the relevant period. Additionally, the ALJ only discounted Plaintiff's credibility based on her failure to seek treatment after December 2010.

As a reason for her lack of mental health treatment, Plaintiff asserted at her hearing that she lacked health insurance and the ability to pay for her treatment. Tr. 16, 40–43. An ALJ may consider lack of treatment in making a credibility determination except when lack of financial means is the primary basis for not receiving treatment. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2004). Plaintiff testified that she was on her parents' insurance until she was 26 and that at the time of the hearing she would not have insurance except for the fact that she was enrolled in a state university. Tr. 16, 40–43. Additionally, Plaintiff testified that she was trying to figure out what was going on with her mental health issues, trying to get free counseling, and that she had seen a doctor for some blood work before coverage by her parents' insurance ran out. Id. Plaintiff also testified that she was in counseling with her family's counselor until her insurance ran out and that she could not get additional counseling without insurance until she started at Portland State University. Id.

Plaintiff also claims that the ALJ failed to take into account that her difficulty in practical reasoning played a role in her lack of treatment and failure to follow though. Pl. Opening Brief at 17. However, Plaintiff did not testify that she was unable to get treatment or follow through with recommendations due to her difficulty in practical reasoning.

The ALJ did not find Plaintiff's explanation for lack of treatment credible. The ALJ noted Burch in his assessment and found that while Plaintiff may have had limited funds, she was not financially precluded from receiving medical treatment. Tr. 16 n.2. Further, the ALJ considered only the periods of time Plaintiff had access to treatment and the extent she utilized those resources. Id. After examining Plaintiff's treatment notes, the ALJ found that Plaintiff

dropped her mental health counseling in December 2010, over a year before she turned 26 and lost coverage under her parent's insurance. Tr. 16. Additionally, Plaintiff's provider records indicated she was authorized for outpatient services with her mental health counselor until April 2011, approximately four months after she stopped attending treatment. Tr. 16, 348. In other words, Plaintiff failed to seek and use treatment even when she had the financial means to do so. The ALJ found Plaintiff's justifications for her failure to seek treatment unavailing. In addition, the ALJ found that Plaintiff was not entirely credible because, while she claimed she stopped attending counseling due to lack of insurance, the evidence indicated she stopped for personal reasons.

The Court agrees that Plaintiff's testimony indicates that she stopped treatment due to personal preferences. Plaintiff's treatment notes indicate that right before she ceased mental health counseling in December 2010, she said she wanted to be left alone to live the life she wanted. Tr. 16, 362–63. In March 2010 Plaintiff further explained to a consultative examiner that she was not interested in counseling because she did not see "the point." Tr. 16, 384. Plaintiff reported to the examiner that her past psychologist had retired and her psychiatrist had moved but she was okay with not seeing either of them because "they did not do anything for [her]." Tr. 384. When Plaintiff was examined in February 2013, her chief complaint was memory issues and she did not make any significant complaints related to depression or anxiety; she also indicated she was not taking any medications and had not seen a physician in over a year. Tr. 16, 425–26.

Additionally, while Plaintiff claimed she tried a variety of medications and saw various mental health providers, her records showed that she did not appear for many scheduled mental health visits and did not consistently take her medication. There is no evidence that Plaintiff sought mental health treatment after December 2010. Overall, because Plaintiff's lack of

treatment and follow through was due to "her own personal preference" and not related to her

mental health issues, "it was reasonable for the ALJ to conclude that the level or frequency of

treatment [was] inconsistent with the level of complaints." See, e.g., Molina, 674 F.3d at 1114

(internal quotations and citation omitted).

        While Plaintiff indicated she did not seek mental health treatment due to lack of

insurance, the ALJ found that Plaintiff was covered by insurance beyond the date she ceased

treatment. Further, Plaintiff's assertion was contradicted by her testimony that she stopped

treatment because she wanted to be left alone and did not see the point of further counseling. Tr.

16, 362–63, 384. In sum, the ALJ's findings were supported by substantial evidence.

        B.  Daily Activities

        The ALJ found that Plaintiff's activities throughout the relevant period were inconsistent

with her allegations of severely limiting symptoms. The ALJ may discredit a plaintiff's

testimony when the plaintiff reports participation in everyday activities indicating capacities that

are transferable to a work setting. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600

(9th Cir. 1999); Fair, 885 F.2d at 603.

        In Molina, "the ALJ found that [the plaintiff's] claimed inability to tolerate even minimal

human interaction was inconsistent with her daily activities [including walking her two

grandchildren to and from school, attending church, shopping, and taking walks] throughout the

disability period." 674 F.3d at 1113. Further, these daily activities "undermined [the plaintiff's]

claims that she was incapable of being around people without suffering from debilitating panic

attacks." Id. The Ninth Circuit affirmed the ALJ's findings that the daily activities the plaintiff

participated in "involved a degree of human interaction that was analogous to that required by

her past relevant work, which involved working at a machine by herself in a large room that was occupied by only four or five other people, with whom she did not generally need to interact." Id.

Here, the ALJ found that Plaintiff's records indicated she had been able to attend college and work part time throughout the relevant period. Tr. 16. Her transcripts indicated that between Fall Quarter 2010 and Spring Quarter 2012 she consistently took and completed between six and twelve credits per semester at Portland Community College, maintaining a grade point average of 3.16. Id. Additionally, Plaintiff's transcripts did not show any class withdrawals or incompletes. Tr. 17. Plaintiff also testified at the hearing that she had lived with a roommate for the past year. Id. She said she used public transportation and described engaging in social activities once or twice a week and attending character conventions. Id.

The ALJ found that collectively these activities showed that Plaintiff was capable of far more than she alleged at her hearing. She had been juggling a number of activities, succeeding in school and working part-time. Id. The Court affirms the ALJ's findings. Even if the evidence "is susceptible to more than one rational interpretation," because the ALJ's conclusion is supported by substantial evidence, it "must be affirmed." See Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted).

There is substantial evidence supporting the ALJ's clear and convincing reasons for discrediting Plaintiff's testimony. Thus, the ALJ did not err in finding the Plaintiff's credibility was undermined.

III.    Dr. Lange's Opinion

Plaintiff contends that the ALJ erred in his weighing of examining neuropsychologist Dr. Donald Lange's opinion. The ALJ afforded some weight to Dr. Lange's opinion because he found it heavily relied on Plaintiff's subjective reporting and was vague. However, according to

Plaintiff, the ALJ completely rejected Dr. Lange's opinion by failing to incorporate any of his findings about Plaintiff into the RFC. The Court finds that the ALJ properly weighed and incorporated Dr. Lange's opinion into the RFC.

Social security law recognizes three types of physicians: (1) treating physicians; (2) examining physicians; and (3) nonexamining physicians. See Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons supported by substantial evidence. Lester, 81 F.3d at 830–31. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. Id.

Dr. Lange's opinion is contradicted by Dr. Dietlein. Tr. 387. Therefore, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, for his decision to award only some weight to Dr. Lange's opinion.

Plaintiff contends that the reasons given by the ALJ for discounting Dr. Lange's opinion are not specific and legitimate reasons. First, Plaintiff argues that while the ALJ stated that he discounted Dr. Lange's opinion because it was heavily based on Plaintiff's subjective reporting, Dr. Lange's opinion was actually equally or more so based upon his clinical observations of Plaintiff. Second, Plaintiff argues that the ALJ mischaracterized Dr. Lange's findings as vague and equivocal when, in fact, they were not.

Plaintiff argues that the ALJ should have fully credited Dr. Lange's opinion and incorporated all of his limitations into the RFC. However, the Court finds that the ALJ did not err in giving Dr. Lange's opinion some weight because some of Dr. Lange's conclusions were vague and portions of Dr. Lange's report heavily relied on Plaintiff's subjective reporting.

Additionally, the ALJ did incorporate portions of Dr. Lange's report into Plaintiff's RFC. Furthermore, even if the ALJ had awarded full weight to Dr. Lange's opinion, it would not have resulted in a different RFC.

Dr. Lange performed a psychological evaluation of Plaintiff in September 2010. Tr. 18, 269–82. During his evaluation, Dr. Lange administered a battery of neuropsychological tests to Plaintiff and had her complete two behavioral inventories and symptoms checklists. Tr. 269, 273. Dr. Lange split his report into multiple sections: Reason for Referral; Social, Educational, and Work History; Subjective; Objective; Test Performance; Interpretation of Psychological Inventories; Assessment; In Summary; Functional Limits; Strengths; and Plan. Tr. 269–82.

A.  Based on Plaintiff's Subjective Reporting

First, Plaintiff contends that Dr. Lange's findings about Plaintiff were based on the battery of neuropsychological screening tests he administered and not on Plaintiff's subjective reporting. While it is true that Dr. Lange administered many neuropsychological tests, several sections of his report largely relied on Plaintiff's self reporting and not on the results of the tests.

An ALJ can reject a physician's opinion if based on an uncredible plaintiff's subjective reports. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in rejecting opinions based on subjective complaints). However, to be rejected, the medical opinion needs to be "premised to a large extent upon the [plaintiff's] own accounts of [her] symptoms and limitations … once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

Dr. Lange's psychological evaluation contained sections substantially based on Plaintiff's subjective complaints. These sections were Social, Educational, and Work History, Subjective, and Interpretation of Psychological Inventories. The Interpretation of Psychological Inventories

did contain a few clinical observations of Plaintiff by Dr. Lange: Plaintiff has "a strong tendency to report symptoms, problems, and negative feelings[,]" "[s]he presents as socially awkward, withdrawn, introverted, and self-conscious[,]" and she "appears apathetic, dull, quiet, colorless, vague, aloof, and introverted." Tr. 273–76. However, the rest of the section was based on the reported symptoms Plaintiff filled in on her two behavioral inventories and symptoms checklists. Id. Because these sections were largely based on Plaintiff's subjective reporting and the ALJ already discounted Plaintiff's credibility and found that Plaintiff tended to underreport her capabilities, the ALJ's reason for assigning less weight to Dr. Lange's evaluation was specific and legitimate.

B.  Vague

Next, Plaintiff argues that the ALJ incorrectly characterized Dr. Lange's findings as vague. Plaintiff contends that while Dr. Lange used a prospective style in his report, he wrote concretely about his findings. Pl. Opening Brief at 14.

However, some of Dr. Lange's conclusions about Plaintiff were vague. Several of Dr. Lange's statements in his Functional Limits section do not adequately identify Plaintiff's functional limitations; rather they speculated that Plaintiff "*may* consume an enormous amount of energy" when focusing "for long periods of time[,]" "*may* have difficulties handling complex information[,]" and "*may* … experience minor fluctuating deficits in memory and learning." Tr. 279 (emphases added). A physician's opinion need not be given controlling weight when it is "conclusory, brief, and unsupported by the record as a whole ... or by objective medical findings." Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). Here, Dr. Lange's vague conclusions failed to identify functional limitations flowing from Plaintiff's medically determinable impairments.

C.  Incorporation of Dr. Lange's Opinion in the RFC

Plaintiff also claims that the ALJ did not incorporate any of Dr. Lange's opinions into Plaintiff's RFC, effectively giving his report no weight. Plaintiff points to limitations regarding her psychomotor speed and visual motor coordination, problems with short-term visual memory, and difficulties in practical reasoning. Tr. 273–78; Pl. Opening Brief at 14. However, Dr. Lange did not include these as limitations in his Functional Limits section. Dr. Lange's listed functional limitations included: no significant physical limitations, major issues with depression, anxiety, and stress, minor inconsistent difficulties with attention, concentration, and freedom from distraction, occasional deficits with mental tracking and mental control, average to higher range of memory with some fluctuation, and difficulty with practical reasoning and development of behavioral alternatives. Tr. 279–80. Dr. Lange also concluded that Plaintiff's depression, anxiety, and her personality issues were the primary barriers to her vocational and educational success. Tr. 280.

The ALJ incorporated Dr. Lange's opinion into the RFC. By way of example, Dr. Dietlein concluded that Plaintiff was able to engage in social interactions at an acceptable level and able to understand and remember complex instructions. On the other hand, Dr. Lange concluded that Plaintiff may have issues with complex instructions and had issues with social interactions. The ALJ incorporated Dr. Lange's opinion in to the RFC despite Dr. Dietlein's conclusion by limiting Plaintiff to simple instructions and limiting Plaintiff to minimal social interactions. Additionally, the ALJ's RFC incorporated the finding that Plaintiff had difficulties with practical reasoning and social interaction by limiting her to reasoning Level 2 and limiting interactions with coworkers and supervisors. These limitations are in line with Dr. Lange's finding that Plaintiff was unable to tolerate many work situations because they required

interpersonal interactions. Tr. 280. Notably Dr. Lange did not opine that Plaintiff would be unable to tolerate all work situations due to her issues with social interactions.

Even if Dr. Lange's opinion was given full weight, it would not change Plaintiff's RFC. The only one of Dr. Lange's limitations Plaintiff contends that the ALJ failed to include, which is not already incorporated into the RFC, is the limitation that she "may not be able to maintain focus performing simple duties within the usual and customary breaks." Pl. Opening Brief at 12. However, Dr. Lange did not actually find that Plaintiff was limited in this way. Dr. Lange merely found that Plaintiff "may consume an enormous amount of energy" when focusing "for long periods of time[.]" Tr. 279.

In this context, the Court may not substitute its judgment for that of the ALJ. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); Cf., Turner v. Comm'r, Soc. Sec. Admin., 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reasons for rejecting a physician's opinion where the ALJ incorporated them into the RFC). This Court finds that the ALJ did not err when giving Dr. Lange's opinion some weight. Further, the ALJ specifically found that "there is nothing in Dr. Lange's evaluation that is inconsistent with the above described limitations [in the RFC] and his evaluation does not suggest any significant greater limitation." Tr. 19. Thus, if there was any error in giving Dr. Lange's opinion some weight, instead of full weight, it was harmless error because it would not change Plaintiff's RFC or the ultimate nondisability determination. Molina, 674 F.3d at 1115. The Court affirms the ALJ's decision discounting the opinion of Dr. Lange.

//

//

//

CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this _____ day of _____, 2015.


_____
MARCO A. HERNÁNDEZ
United States District Judge